# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

Lynchburg Telephone Co. v. Booker.

March 9, 1905.

Absent, Cardwell, J.

1. EVIDENCE—*Admissibility—Admissions of a Manager of a Corporation.*— The admission of the manager of a telephone company, made while in the performance of his duties, that a wire which caused a personal injury was the wire of his company, is admissible in evidence against the company in an action brought against it to recover damages for the injury.

2. PLEADING—*Allegation and Proof—Variance.*—Where a declaration avers that the plaintiff was in a certain street of a city when injured by an electric wire of the defendant, but makes no averment of the precise position of the wire which inflicted the injury, and the evidence shows that he was injured by a wire hanging down through a tree into a yard adjacent to, but not in, that street, and it plainly appears that, if not in the street, the wire was in such close proximity to it as to have inflicted the injury on the plaintiff who was in the street, there is no variance between the allegation and proof.

3. ACTION BY WRONGDOER—*Trespasser.*—A child eight years of age, who, passing along a city street, unlawfully thrusts his hand through or over the railing enclosing an adjacent lot, and takes hold of a live electric wire, believing it to be a string, and is injured, is not such a trespasser as will bar him from recovering damages of the owner of the wire who has negligently permitted it to become charged and to hang down in close proximity to a public street.

4. INSTRUCTIONS—*Evidence to Support.*—It is the duty of the trial court, upon request, to give an instruction if the evidence tends to support it.

5. Appeal and Error—*Remitting Part of Recovery.*—If a plaintiff, when put upon terms to remit ·a part of his recovery or else submit to a new trial, accepts the reduced sum, he cannot be heard to question the action of the trial court in this particular upon a writ of error granted to the defendant.

Error to a judgment of the Corporation Court of the city of Lynchburg, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

Upon the trial of the case, the defendant in error asked for nine instructions, to all of which but two the plantiff in error objected; and the plaintiff in error asked for ten instructions, to all of which the defendant in error objected; "and thereupon the court gave the jury" the twelve instructions set forth below as "instructions given by the court," to all· of which except the sixth, seventh, ninth, and twelfth, the plaintiff in error objected, and, the objection being overruled, excepted to the ruling of the court.

The instructions asked for by the plaintiff in error (Lynchburg Telephone Co.) were as follows:

"(1) The court instructs the jury that the burden rests upon the plaintiff to show by a preponderance of evidence every fact necessary to hold the defendant liable for the injury complained of.   Such evidence must show more than the probability of a negligent act.   A verdict cannot be found on mere conjecture, but there must be affirmative and preponderating proof that the injury of which the plaintiff complains is the proximate result of the negligence of the defendant.

"(2) The court instructs the jury that, in order to entitle the plaintiff to recover, it must appear by preponderating and af-

firmative evidence that the injury complained of was the proximate result of some act of negligence of the defendant.

"(3) The court instructs the jury that although they may believe that the wire which the plaintiff took hold of was the defendant's wire, nevertheless, if they further find from the evidence that it was located on a lot fenced off from the street in which the plaintiff was at the time by a picket or paling fence, and that the end of the wire which the plaintiff grasped was hanging down about two feet inside said fence, they must find for the defendant.

"(4) The court instructs the jury that in this case the defendant can be held liable only for the probable consequences of any neglect or omission of which it may have been guilty. By 'probable consequences' is meant those consequences which are most likely to result from an act than not; and therefore, unless the jury believe from the evidence that the plaintiff's injury was such a probable consequence or result from some negligent act or omission of the defendant, they must find for the defendant.

"(5) The court instructs the jury that if they believe from the evidence that the injury received by the plaintiff was the result of a combination of unusual circumstances, no one of which can fairly be said to be the direct cause of the injury, then the injury in law is regarded as the result of pure accident, and there can be no recovery for such injury.

"(6) If the jury believe from the evidence, and their observation of the plaintiff on the stand, that he was of sufficient intelligence to know that there was danger in a wire hanging down at one end with the other end attached to a trolley or feed wire charged with electricity, and that the plaintiff (by the exercise of such prudence as a person of his intelligence should have exercised under the circumstances) might have avoided the injury, they must find for the defendant.

"(7) The court instructs the jury that, even though they may believe from the evidence that ·the defendant company negligently allowed one of its wires to become detached from its poles and come in contact with a wire of the Traction Company charged with a dangerous current of electricity, and that the plaintiff's injury was caused by this coming in contact with such wire, nevertheless, if they further believe from the evidence that this condition had remained for such length of time as would have enabled the said Traction Company to discover and remedy it by the exercise of reasonable care in the inspection of its wires, then the negligence of the defendant company is not the proximate cause of the plaintiff's injury, and they must find for the defendant.

"(8) The court instructs the jury that the law regards every injury as the consequence or result of the proximate cause of such injury, and not as the consequence or result of a more remote cause, although but for such remote cause the injury could not have occurred. The proximate cause is not necessarily the nearest cause in point of time or space, but it must be the nearest in *casual* relation to the injury or result. In other words, the proximate cause is the causing cause. And unless the jury believe from the evidence that some negligent act or omission of the defendant was the proximate cause of the plaintiff's injury; and that such result (namely, the plaintiff's injury) was the natural and probable consequence of such negligent act or omission of the defendant—that is to say, such a result as a reasonably prudent man, by the exercise of reasonable prudence, might have anticipated as likely to occur in the manner in which it did occur—they must find for the defendant.

"(9) The defendant moves the court to strike out all the evidence adduced by and on behalf of the plaintiff on the ground that there is a material variance between the case

stated in the declaration and the case which the evidence adduced by and on behalf of the plaintiff tends to prove, and in this connection also asks the court to instruct the jury that under the pleadings in this case the jury cannot find for the plaintiff upon the evidence adduced by and on his behalf.

"(10) A result or effect which is accomplished by the intervention of some independent force taking advantage of and operating upon a thing, and thus producing a result not the natural and probable effect of the thing itself, is not chargeable in law to the thing so taken advantage of and operated upon by the independent force."

To all of which instructions the plaintiff in error objected; and thereupon the court gave the jury the following twelve instructions:

"(1) The court instructs the jury that if they believe from the evidence that the defendant, the Lynchburg Telephone Company, had erected, and on the 20th day of October, 1903, maintained, on Eleventh street, between Monroe and Taylor streets, in the city of Lynchburg, a telephone system operated for pay, consisting in part of telephone poles planted in and along said Eleventh street, between said Monroe and Taylor streets, and had attached to said poles certain telephone wires, forming part of its telephone system, and that said Eleventh street, at said point, was a public highway over which the public was accustomed to travel, and that the Lynchburg Traction & Light Company, at the same time, on said Eleventh street, between Monroe and Taylor streets, maintained an electric trolley street car system, one or more of the wires of which were charged with a dangerous current of electricity, it was then the duty of the said defendant, the Lynchburg Telephone Company, to use care commensurate with the danger and consistent with the practical conduct of its business to inspect and maintain its said wires, in order to prevent its said wires

from coming in contact with the said heavily charged wires of the Lynchburg Traction & Light Company, in such manner as to become charged with a dangerous current of electricity, and, while so charged, to prevent injury to every one who may be lawfully in proximity to such wires or liable to come accidentally or otherwise in contact with them, and any failure upon the part of said defendant company to discharge said duty would be negligence.

"(2) The court instructs the jury that although they may believe from the evidence that the defendant, the Lynchburg Telephone Company, had constructed and put up its poles and telephone wires along Eleventh street, between Monroe and Taylor streets, before the Lynchburg Traction & Light Company erected and constructed its electric trolley street car system along said Eleventh street, between the streets aforesaid, and that thereafter the Lynchburg Traction & Light Company erected and constructed its said electric trolley street car system, with its trolley wires and feed wires, charged with a heavy and dangerous current of electricity, under or lower than the wires of the said defendant, the Lynchburg Telephone Company, this fact does not absolve the said defendant from the duty to exercise the degree of care and diligence in inspecting and maintaining its own wires, as set forth in instruction No. 1; it being immaterial which system was first constructed in said street.

"(3) The court instructs the jury that if they believe from the evidence that the defendant company, or its agents or employes in charge, knew, or by the exercise of care commensurate with the danger might have known, that one of its wires strung over and along Eleventh street, between Monroe and Taylor streets, had become broken and detached from its proper position on its telephone poles, and had come in contact with, or attached to, one of the heavily charged electric wires

of the Lynchburg Traction & Light Company, in such manner as to be liable, to be or become charged with a dangerous current of electricity, and in such position as to be liable, by a change of position or otherwise, to injure a child passing along or being in said Eleventh street, then it was the duty of the said defendant company and its agents or employes in charge to remove said wire, and a failure to discharge that duty would be negligence.

"(4) The court instructs the jury that if they believe from the evidence that on the 20th day of October, 1903, one of the wires of the defendant company was detached from its proper position on its pole on Eleventh street, between Monroe and Taylor streets, and came in contact with a wire of the Lynchburg Traction & Light Company, which was charged with a heavy and dangerous current of electricity, and thereby itself became charged with a dangerous current of electricity, and hung down in a lot abutting on Eleventh street so close to the ground, and so near to Eleventh street as to be easily and readily grasped by a child while passing along or being in said Eleventh street, and that the defendant knew, or by the exercise of care commensurate with the danger could have known, the condition of said wire, and that the plaintiff, while in said Eleventh street, took hold of and was burned and injured by the said wire and the said dangerous current of electricity then being thereon, the law presumes, *prima facie*, that the injury to the said plaintiff was caused by the negligence of the defendant company, and the burden is then on the defendant company to establish that it was not guilty of the negligence which caused the said injury.

"(5) The court instructs the jury that although they may believe from the evidence that the Lynchburg Traction & Light Company was negligent in the construction, maintenance, and inspection of its trolley wires, feed wires, or other wires, pass-

ing along and over Eleventh street, between Monroe and Taylor streets, or along and over any other portion of said Eleventh street, yet if the jury further believe from the evidence that the defendant, the Lynchburg Telephone Company, was also guilty of negligence in constructing, inspecting, or maintaining its own wires, and that the negligence of both companies concurred in producing the injury of the plaintiff, then the defendant company will not be excused from liability for its own negligence by reason of the negligence of the Lynchburg Traction & Light Company.

"In other words, where the evidence proves each of two parties to have been guilty of negligent acts of commission or omission, which acts concurred in causing the injury of another, neither of the said parties can escape liability for his own negligence by showing the negligence of the other.

"(6) The court instructs the jury that any negligence of omission or commission by the employes, agents, or servants of the defendant company in the discharge of their duty is in law the negligence of the defendant company, and must be so regarded by the jury.

"(7) The court instructs the jury that the burden rests upon the plaintiff to show by a preponderance of evidence every fact necessary to hold the defendant liable for the injury complained of. Such evidence must show more than the probability of a negligent act. A verdict cannot be found on mere conjecture, but there must be affirmative and preponderating proof that the negligence of the defendant was the proximate cause of the injury of which the plaintiff complains, or that its negligence concurred with that of the Traction Company, in producing the injury. But negligence may be established by the evidence of the defendant, as well as the plaintiff.

"(8) The court instructs the jury that, in order to entitle the plaintiff to recover, it must appear by preponderating and

affirmative evidence that the negligence of the defendant was the proximate cause of the injury complained of, or that said injury was caused by the concurring negligence of the defendant and the Traction & Light Company.

"(9) The court instructs the jury that even though they may believe from the evidence that the defendant company negligently allowed one of its wires to become detached from its poles and come in contact with a wire of the Traction Company charged with a dangerous current of electricity, and that the plaintiff's injury was caused by his coming in contact with such wire, nevertheless, if they further believe from the evidence that this condition had remained for such length of time as would have enabled the said Traction Company to discover and remedy it by the exercise of reasonable care in the inspection of its wires, and that the said negligence of the Traction Company was the independent or proximate cause of the plaintiff's injury, they must find for the defendant.

"(10) The court instructs the jury that the law considers every injury as the consequence or result of the proximate cause of such injury, and not as the consequence or result of a more remote cause; that is, an act or omission occurring or concurring with another, which had it not happened the injury would not have been inflicted, notwithstanding the latter. But proximate cause does not, as a legal term, mean closeness or nearness in point of time, or the physical sequence of events, but closeness or nearness in point of *casual* connection. And if the jury believe from the evidence that the injury of the plaintiff was not the natural and probable result of some negligent act or omission of the defendant, and in the light of attending circumstances it ought to have been foreseen by a person of ordinary care, then they must find for the defendant.

"(11) The court instructs the jury that if they believe from the evidence that the plaintiff, F. C. Booker, is an infant of

the age of eight years, then the law presumes him to be incapable of contributory negligence; but this presumption may be rebutted. And if the jury shall believe, from their observation of the plaintiff on the stand and his testimony and other evidence, that he was of sufficient intelligence, capacity, and experience to know the probable danger from the wires upon or near Eleventh street, and his duty to avoid them for his protection, and that he negligently failed to avoid them, then his contributory negligence will bar his recovery.

"(12) The court instructs the jury that, if they find for the plaintiff, they may, in estimating the damages, take into consideration the bodily injury and disability sustained by him, if any, and the permanent or temporary character thereof, and the physical pain and mental anguish of the plaintiff caused thereby, if any, and fix the amount of damage at such sum as will be a just, reasonable, and proper compensation therefor."

To all of which instructions, except the sixth, seventh, ninth, and twelfth, the said plaintiff in error objected.

*Caskie & Coleman* and *P. H. C. Cabell,* for the plaintiff in error.

*Lee & Howard,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The defendant in error, a little boy eight years of age, was sitting upon a box on the sidewalk of one of the streets in the city of Lynchburg, when, seeing what he supposed to be a string dangling down through the limbs of a tree in an adjacent yard, he put out his hand and grasped it. It proved to be an electric wire belonging to the Lynchburg Telephone

Company, which had broken and fallen upon a hook of the Lynchburg Traction & Light Company, and by that means came in contact with a wire of the latter company heavily charged with electricity. The defendant in error was knocked down, his person burned in several places, and his right hand so injured that the first, second, and third fingers were cut off close to the knuckle joints.

The jury brought in a verdict for $10,000, but the trial court, deeming it excessive, put the defendant in error upon terms, either to accept an abatement of the verdict to $5,000, or have it set aside. The judgment of the court recites that "thereupon the plaintiff, under protest, accepted the said sum of $5,000, and the motion of the defendant is therefore overruled." To the action of the court in refusing to set aside the verdict, the defendant excepted, and the case is now before us to review certain rulings made by the trial court.

The first error assigned is to the action of the court permitting the witness, Apperson, to testify that Freed, the manager of the Lynchburg Telephone Company, after the accident, admitted that the wire with which defendant in error came in contact belonged to the Lynchburg Telephone Company.

It appears that, shortly after the accident, Apperson, the president of the Lynchburg Traction & Light Company, went to a point at or near the scene of the accident. Mr. Freed, the manager of the Lynchburg Telephone Company, was also there. These men were upon the scene of the accident in the discharge of duties which devolved upon them as the officers of their respective companies; and the answer given to the question was, we think, admissible not as a part of the res gestæ, but because made by an officer in the performance of his duty. 2 Cook on Corp. (4th Ed.), sec. 726.

In Morse v. Conn. Riv. R. R. Co., 72 Mass. 450, it is held

that in an action against a railroad corporation by a passenger for the loss of his trunk, the admissions of the conductor, baggage master or station master, as to the manner of the loss, made in answer to inquiries in behalf of the passenger are admissible in evidence against the corporation.

In *Lane* v. *Boston & Albany R. Co.*, 112 Mass., at page 455, it is held that in an action against a railroad company for the non-delivery of lost freight, the declaration of their freight agent that he thought, perhaps, the Thompsons had got it, made in answer to an inquiry by the consignee, is admissible in evidence against the company; Chief Justice Gray remarking that "the declarations of their freight agent in answer to the plaintiffs' demand were made in the performance of his duty, and therefore rightly admitted in evidence against the defendants."

In *Toll Bridge Co.* v. *Betsworth*, 30 Conn. 380, the plaintiffs were a corporation owning a toll bridge, through which was a draw for the passage of vessels, the charter requiring them to keep a draw-tender, and to open the draw for vessels desiring to pass through. A general statute required vessels passing through any such draw to warp through, and not to sail through, and imposed a penalty for the violation of the act. The defendant, in passing with his vessel through the draw, which had been opened by the draw-tender for him to pass, sailed through instead of warping through, and, in so doing, was driven against the side of the draw and injured it. In an action brought by the company for the damage, the defendant claimed that the plaintiffs had by long use licensed vessels to sail through, and offered evidence of declarations made by the draw-tenders at various times when vessels were passing through under sail, that they preferred to have them go through in that manner. It was held, that their admissions were admissible as the declarations of the agents of the company while in the discharge of their duties as such agents.

In the case before us, the manager of the Telephone Company (the general manager of the company, if there be a difference, as he is sometimes spoken of in the evidence) was upon the scene of the accident and investigating the circumstances connected with it. He was speaking with reference to a matter about which he, if any one, had knowledge—that is, whether or not the wires in question were the property of the company of which he was manager—and he made the statement with respect to their ownership while engaged in the performance of a duty as an officer of the company.

The next assignment of error is to the action of the court in refusing to strike out all the evidence introduced by and on behalf of the plaintiff, on the ground that there is a material variance between the case stated in the declaration and the case which the evidence tends to prove.

The declaration, omitting the recitals and mere formal parts, states "that on the 20th day of October, 1903, by reason of the carelessness and negligence of the said defendant, its agents, and servants, aforesaid, a part of one of its said telephone wires, located in, along, upon, and over said Eleventh street, between Harrison and Wise streets, as aforesaid, at a point on said Eleventh street, between said Harrison and Wise streets, to-wit, between Monroe and Taylor streets, became detached from its proper location upon the defendant's poles aforesaid, and, by reason of the carelessness and negligence of the said defendant, its agents and servants aforesaid, came in contact with one or more of the aforesaid wires of the electric railway aforesaid, there located, as aforesaid, and then and there charged, as aforesaid, with a heavy and dangerous current of electricity; and also in contact with the right hand and legs of the said plaintiff, who was then and there in said Eleventh street, at the point aforesaid, and thereby, and by reason of the carelessness and negligence of the said defendant,

its agents and servants aforesaid, the heavy and dangerous current of electricity, then and there being upon and passing over the said wires of the said electric railway, was conducted to, against, and through the right hand and legs of the said plaintiff, whereby, and by means whereof, the said plaintiff was greatly shocked, stunned, and rendered insensible, and caused to suffer great bodily pain and anguish, and whereby also the said plaintiff was greatly and painfully burned in and about his legs, and in and about his right hand to such an extent that, it being thereby rendered necessary, the three main fingers (the first, second and third) of the said plaintiff's said hand were amputated, and he was, and is, thereby rendered permanently maimed and disfigured, and incapacitated for the performance of the ordinary duties of life, and for the performance of manual or clerical labor, and whereby, also, he was caused to suffer great bodily pain and permanent mental anguish and mortification."

The proof shows that the defendant in error had taken a seat upon a box, and that seeing what he supposed to be a string hanging through the limbs of a tree near the railing, he put his hand through or over the railing, grasped the wire, and was injured. Now the contention is that that proof constituted a material variance from the averments of the declaration, because it is there stated that the defendant in error was in Eleventh street, while the evidence proves that he was injured by a wire hanging down through a tree and into a yard adjacent to but not in Eleventh street. There is no averment in the declaration as to the precise position of the wire. It is nowhere said that it was in Eleventh street; but it plainly appears that if not in Eleventh street it was in a position of such proximity to Eleventh street as to have inflicted the injury upon this child who was at the time in the street. So that, if the plaintiff in error is to escape liability, it must be not

upon the ground of a variance between the *allegata* and *probata*, but because for some other reason the proof does not establish its liability as, for instance, that the presence of the wire in the position in which it inflicted the injury was not due to its negligence.

The third assignment of error is to the action of the court in giving certain instructions over the objection of the plaintiff in error, and in refusing certain instructions asked for by it. These instructions will be found in the statement of the case by the Reporter.

We shall not attempt to discuss all the objections taken to the numerous instructions given and refused in this case. Contenting ourselves with the statement that the instructions given by the court fairly submitted the case to the jury, we shall leave them to speak for themselves, adverting briefly only to a few of the more serious objections urged.

In the petition for an appeal, it is suggested, and it was urged in argument before the court, that by the testimony of the defendant in error he was "in unlawful proximity to the wire in question." This contention seems to be based upon the idea that while the defendant in error was lawfully in the street, his hand was unlawfully thrust through, or over the railing—in other words, that the defendant was injured while in the commission of a trespass.

In legal contemplation it may be that any unauthorized entry upon the premises of another whose title extends to the centre of the earth, downward, and without limit upward, by putting one's hand through or over a boundary fence, is a trespass. It would, however, certainly seem that the trespass had reached its vanishing point when such a trespass was committed by a child eight years of age. The owner of the premises would find it difficult to maintain such a defense if he had knowingly permitted so grievous a danger to exist within reach of a public street, and thereby caused an injury to one in-

capable of contributory negligence. The proof in this case is
that the wire which inflicted the injury belonged to the Lynch-
burg Telephone Company; that it was a test wire, No. 19;
that it had been broken in divers places; that it had been
broken in the place where the injury occurred for three days—
the little boy who was injured had seen it two days before the
accident—and the Telephone Company had been informed of
its condition. These facts fully warranted the court in giving
the jury instruction No. 1.

The objection to the second instruction was very properly
withdrawn.

The next assignment of error is to the third instruction, the
objection to which is stated to be, that it assumes facts which
should have been left to the jury. We do not so understand
the instruction. Every recital of fact in that instruction we
understand to have been left to the determination of the jury
upon the evidence.

The fourth instruction was objected to because, as claimed,
there is no evidence to sustain it; while, as it appears to us,
the evidence fully warrants the jury in finding every fact to
have been proved upon which that instruction is predicated;
and it was the duty of the court to give it if the evidence had
a tendency to prove them.

The fifth instruction is plainly right, as are the seventh,
eighth, and ninth. The tenth seems to us sufficiently favorable
to the plaintiff in error, and is substantially the same as in-
struction No. 8 asked for by it.

We think, upon the whole case, that there was nothing pre-
judicial to the plaintiff in error in the rulings of the court upon
the instructions, and that the case was in all respects fairly
submitted to the jury.

With respect to the evidence, we deem it plainly sufficient
to warrant the judgment of the court.

VOL. CIII—77

The defendant in error asks us to review the action of the court in requiring him to remit a part of the verdict upon the penalty of having it set aside. He accepted the verdict, and cannot now be heard to question it.

Upon the whole case, we think there is no error, and the judgment is affirmed.

*Affirmed.*