## Richmond.

## Cecil Haywood, an Infant, by, etc., v. South Hill Manufacturing Company, Inc., et al.

### May 28, 1925.

1. Electricity—*Electric Transformer Guarded by a Wire Fence—Injury to a Child—Case at Bar.*—In the instant case, plaintiff, a child of eleven, received the injury complained of while passing an electric transformer of defendant. The public were protected from the transformer by an ordinary wire fence. There was no warning or danger sign on this fence. The child thrust a piece of old saw through the wire fence into contact with the transformer, and was shocked. It was questionable whether the transformer was located in the public street, which was unimproved and unmarked, or a few feet north of the street line on defendant's premises.

   *Held:* That defendant was liable for the injuries to the child.

2. Streets and Highways—*Electricity—Dangerous Agencies and Instrumentalities.*—Dangerous agencies and instrumentalities, either the in street or so near thereto as to be easily reached by pedestrians passing that way, places upon those responsible for their presence there the duty of giving warnings to and of safeguarding the public, by using such mechanical contrivances as will effectually prevent injury to persons or property. Certainly a deadly, hidden force, such as an electric transformer, should not be left easily accessible to children, whose frequent presence in the vicinity was known and acquiesced in by the owner of the premises, without so much as a danger sign.

3. Negligence—*Dangerous Agencies—Reasonable Care—Best Appliances.*—Reasonable care requires those using dangerous agencies to avail themselves of the best mechanical contrivances and inventions in practical use which are effectual in preventing injury to persons and property. The care must be commensurate with the danger.

4. Electricity—*Negligence—Guard Wires—Insulation.*—Failure to maintain guard wires, insulation and other devices usually employed to prevent danger, is negligence. The proper degree of care requires a greater precaution against injury from electric wires when so placed that persons are likely to come in contact therewith, than at more isolated points to which persons are not expected to resort.

5. TRESPASS—*Care Due to a Trespasser—Exceptions.*—As a general proposition the owner of land owes no duty of prevision to trespassers, but there are exceptions to the rule as well recognized as the rule itself, and a mere technical trespass by a child of eleven is such an exception, where the owner of the premises permitted a grievous danger to exist within reach of a public street.

6. NEGLIGENCE—*Joint Liability—Electric Company and Manufacturer—Case at Bar.*—Where it appeared from the evidence that the wires leading from the meter of a power company located on a pole about seventy-five feet away from a transformer and leading thereto were the property of a box company; that the current was measured and sold at the meter and there delivered to the box company, who owned and controlled all the equipment used in connection with the current after it left the meter of the power company, the court did not err in instructing that the power company could not be held responsible for the injury to plaintiff from contact with the transformer, unless it either owned, controlled or had some interest in the management and operation of the transformer or the wires leading from its high voltage line to the transformer.

Error to a judgment of the Circuit Court of the city of Portsmouth. Judgment for defendants. Plaintiff assigns error.

*Reversed in part, affirmed in part.*

The opinion states the case.

*James G. Martin and Brother*, for the plaintiff in error.

*R. T. Thorp, E. Randolph Williams*, and *Venable, Miller, Pilcher & Parsons*, for the defendants in error.

McLEMORE, J., delivered the opinion of the court.

[1] The accident that gave rise to this suit occurred on the outskirts of the city of Portsmouth in a factory section where many of the streets exist only on the plats.

The South Hill Manufacturing Company, hereafter referred to as the box company, has a large manufacturing plant fronting on Douglas avenue and extending

on both sides of Eighth street which extends through the plant, though physically unmarked. Employees and others use this street at will, but as it is nothing more than a path with no improvements and with nothing to indicate where the sides of the street terminate and private property begins, it could not always be determined whether pedestrians were using the street or were upon private property.

In 1916 the Virginia Railway and Power Company erected for the box company a transformer station somewhere near the line of Eighth street, for the purpose of making available electric current to be furnished by the power company and to be used in the operation of the box company. This station was built upon or very near the ground, and the public protected from any danger that might result from coming in contact with the deadly current of 11,000 volts that passed through it, only by a wire fence constructed around it, the wire used being the ordinary fence wire in common use upon farms. The distance from the fence to the transformer was variously estimated at from the span of the hand to fifteen or eighteen inches.

On the morning of the accident, Cecil Haywood, an infant of eleven years, was passing the transformer, having in his hand a piece of an old saw some fifteen inches in length, which he had picked up in walking along the street or path. With this piece of saw, he thrust his hand and fore arm through the wire fence, bringing some part of the saw in contact with the electrified part of the transformer, from which he received injuries sufficient in the judgment of the jury to justify an award of $3,000.00 against the box company, but as to the Virginia Railway and Power Company, a verdict for the defendant.

This verdict of the jury in so far as it related to the

box company the court set aside and, under section 6251 of the Code, entered judgment for the defendant, which action of the court, being excepted to, brings the case before this court for review.

The errors assigned are three in number:

"1st. The court erred in setting aside the verdict and in entering final judgment against the plaintiff.

"2nd. The court erred in allowing in evidence in favor of the Virginia Railway and Power Company, to exempt that company from liability, the contracts between that company and the South Hill Manufacturing Company, Incorporated, marked 'A' and 'B.'

"3rd. The court erred in granting instruction 'X'."

The first assignment of error presents for the court's consideration the major question in the case, namely: Whether or not the defendant box company is liable for injury to the child, Cecil Haywood, under the facts as they must be considered after a verdict by the jury in his favor.

It is seriously contended by plaintiff's counsel that the transformer was located in the street, and it may be conceded there is testimony sustaining this view. Whether the testimony of witnesses living in the neighborhood and frequently travelling along this street and passing the transformer almost daily, to the effect that they knew the street lines, and know the structure from which the child received the injury was partly built upon a public street, is to be considered in the face of a survey made by a competent and disinterested engineer, who demonstrates by measurements and a plat that the transformer is three and five-tenths feet north of the street, we do not deem it necessary to decide.

The street in question is an open unimproved space running through the plant of the box company without marks to indicate its limitations. Pedestrians walked

along the street or on the adjoining land of the box company with equal freedom, in fact they did not know whether they were in the street or on private property, as is apparent from the testimony. These conditions were well known to the company, as was the fact that children frequented this locality, and the plaintiff usually traveled this Eighth street in going from his home to the store, and for the delivery of milk to certain families in the neighborhood.

With the physical facts before us, it would seem to be of no great moment whether the transformer was in fact partly on the street, or just north of the street line. The structure was sitting on the ground, protected by four posts around which was strung ordinary fence wire with meshes about four inches in size. There was no warning or danger signs on this fence, and nothing to indicate to the passer by the fatal results likely to follow contact with the wires leading into the transformers or with parts of the transformer itself which were highly electrified by the reception of 11,000 volts of current.

[2] We think the use of dangerous agencies and instrumentalities either in the street, or so near thereto as to be easily reached by pedestrians passing that way, place upon those responsible for the presence there of the dangerous instrumentalities the duty of giving warnings to and of safeguarding the public by using such mechanical contrivances as will effectually prevent injury to persons or property. Certainly a deadly, hidden force, as in this case, should not be left easily accessible to children whose frequent presence in this vicinity was known to the defendant, and acquiesced in by it, and this without so much as a danger sign anywhere thereabout.

[3] "Reasonable care requires those using dangerous agencies to avail themselves of the best mechanical con-

trivances and inventions in practical use which are effectual in preventing injury to persons and property."

The care must be commensurate with the danger.

[4] "Failure to maintain guard wires, insulation and other devices usually employed to prevent danger, is negligence." *Richmond and Petersburg Elec. Ry. Co.* v. *Rubin*, 102 Va. 809, 47 S. E. 834.

"The proper degree of care requires a greater precaution against injury from electric wires when so placed that persons are likely to come in contact therewith, than at more isolated points to which persons are not expected to resort." 20 Corpus Juris, page 345.

We think the facts in this case place the plaintiff in a stronger position than is presented on behalf of the plaintiff in *Lynchburg Tel. Co.* v. *Booker*, 103 Va. 594, 50 S. E. 148. There the dangerous agency was of temporary duration, and only existed at all, because of some accident to the telephone wire. Here the damage arises from contact with a permanent construction for practical purposes unprotected, owned, controlled and operated by the box company, and located as near or nearer the street than was the wire in the *Lynchburg Tel. Co. Case.*

[5] While it is true, as a general proposition, that the owner of land owes no duty of prevision to trespassers, there are exceptions to the rule as well recognized as the rule itself. A mere technical trespass as in this case (assuming the construction of the transformer to be beyond the street line) or as in the case of *Lynchburg Tel. Co.* v. *Booker, supra,* are examples.

Judge Keith, in the last named case, at page 608 (50 S. E. 152), says:

"In legal contemplation it may be that any unauthorized entry upon the premises of another whose title extends to the centre of the earth, downward, and with-

out limit upward, by putting one's hand through or over a boundary fence, is a trespass. It would, however, certainly seem that the trespass had reached its vanishing point when such a trespass was committed by a child eight years of age. The owner of the premises would find it difficult to maintain such a defense if he had knowingly permitted so grievous a danger to exist within reach of a public street, and thereby caused an injury to one incapable of contributory negligence."

It follows from the views herein expressed that the court erred in setting aside the verdict of the jury and entering judgment for the defendant.

[6] We are further of the opinion that instruction "X" given by the court at the instance of the Virginia Railway and Power Company correctly states the law as applied to the facts of this case.

This instruction proceeds upon the theory that the power company could not be held responsible for the injury to plaintiff, unless it either owned, controlled or had some interest in the management and operation of the transformer or the wires leading from its high voltage line to the transformer.

That it did not have such interest, is not questioned in the record—for while the declaration in both counts charged joint ownership, control and operation, the testimony fails to sustain the allegation—it being established beyond controversy that the wires leading from the meter of the power company located on a pole about seventy-five feet away from the transformer and leading thereto, were the property of the box company; that the current was measured and sold at the meter, and there delivered to the box company, who owned and controlled all the equipment used in connection with the current after it left the meter of the power company.

Under such a state of facts the instruction stated a

correct principle of law, and the jury's verdict was clearly supported by the evidence. We are of the opinion, therefore, that the judgment of the trial court should be reversed in so far as it affects the South Hill Manufacturing Company, and a judgment here entered for the plaintiff in accordance with the verdict of the jury, and that the judgment of the said trial court entered in favor of the Virginia Railway and Power Company should be affirmed.

*Reversed in part, affirmed in part.*