Carter, Appellant, *v.* The Pennsylvania Rd. Co., Appellee. (Two Cases.)

(Nos. 3736 and 3727—Decided November 8, 1944.)

*Mr. Paul M. Herbert* and *Mr. Abraham Gertner,* for appellants.

*Messrs. Burr, Porter, Stanley & Treffinger,* for appellee.

GEIGER, J. These two cases involve the same question and will be considered together. The facts stated in the petitions of Samuel Carter, the father, and Samuel Carter, Jr., the son, are substantially the same, the father suing for expenses incurred by him on account of the alleged injury to the son, and the son suing for compensation for injuries suffered by him.

Briefly, the two petitions are to the effect that on the 20th day of June 1942, the son, an infant, was playing at the home of a friend; that the premises immediately adjoining to the east constituted a wide-open and unfenced field extending approximately 400 feet to the railroad tracks of the defendant; that along the eastern edge of such field there was a dirt road open for public use; that such open field had for a time been used as a playground for children, including the infant son, and at all times mentioned in the petition was being used as a playground for children, including the infant son; that the defendant at all times knew that the field adjoining defendant's tracks was being used as a children's playground; that for a long period of time up to the day of the injury of the infant son, the defendant had provided and stationed along its right of way near the playground a watchman, a part of whose duties was to warn and caution children not to go upon the tracks because defendant knew that if they did, injuries probably would result to such children; that the custom and usage of the defendant in placing its watchman upon the property adjacent to the play-

ground had created the feeling and belief among the parents of the children who habitually frequented the playground, that the children were safe from the dangers of moving trains and cars; that the practice and custom of the defendant in placing its watchman as above set forth had led the parents of the children to believe that such custom long established would be continued and that it was safe to permit children to use and occupy the playground; that subsequently defendant withdrew its watchman, leaving its tracks and moving trains without any person to warn children and to prevent them from going onto the railroad tracks and incurring injury; that the defendant failed to warn or take any steps to advise the parents of its change of custom in maintaining a watchman at such premises; and that the defendant knew that by withdrawing its watchman, children, including the infant son, being attracted by moving cars and trains, would go upon the railroad tracks, and would be injured.

It is alleged that the defendant knew that the open field was used by children, knew that moving trains were attractive to children, and knew that childish curiosity would cause children, including the infant son, to go upon the railroad tracks and thereby endanger their lives and limbs; that at the time mentioned the attention of the infant son was drawn to a train consisting of 50 freight cars, operated by defendant, which train was proceeding at a slow rate of speed in a southerly direction on such tracks and in full view of the house and lot where the infant son was playing; that the infant son was attracted to the train; that in total ignorance of the dangers involved he ran out to watch the cars; and that the wheels of one of the cars ran over and mangled him in the manner stated.

To the amended petitions general demurrers were filed and the court found that the demurrers were

well taken and should be sustained; and the plaintiffs not desiring to plead further it was considered by the court that the defendant go hence without day and recover from plaintiffs its costs.

Plaintiffs contend that the defendant owed the infant son a duty for two reasons: (1) It was under a duty to take reasonable precaution to prevent injury, knowing that the children's playground abutted its tracks and that trains attracted children who would be injured unless precaution was taken. (2) Having taken the precaution of establishing watchmen, a part of whose duty was to warn children, the defendant was under a duty not to abandon the use of such watchmen without notice, it having actual knowledge that children would in fact be injured.

It is finally asserted that the court erred in sustaining the demurrer because (1) the knowledge of the defendant of the facts created an obligation to take reasonable precaution, and (2) even if no duty existed upon the defendant to take any precaution, the defendant having voluntarily assumed to protect children with watchmen, had a duty not to withdraw these watchmen with reckless disregard of the probable injury.

Counsel for both sides have presented interesting briefs. We have read the many cases cited and regard the following as the cases most strongly supporting plaintiff's claim: *Coy, an Infant,* v. *Columbus, Delaware & Marion Electric Co.,* 125 Ohio St., 283, 181 N. E., 131; *Harriman* v. *P., C. & St. L. Ry. Co.,* 45 Ohio St., 11, 12 N. E., 451, 4 Am. St. Rep., 507; *Ziehm* v. *Vale,* 98 Ohio St., 306, 120 N. E., 702, 1 A. L. R., 1381. Those cases and others cited by counsel present different states of facts from that asserted in the plaintiffs' petitions. The plaintiffs in order to hold the railroad company liable for having withdrawn the watchman

must show that the duties of such watchman were to protect the public from dangers incident to the operation of the railroad. There are no allegations in the plaintiffs' petitions that the railroad negligently operated its trains. See the first paragraph of the syllabus in the case of *Harriman* v. *P., C. & St. L. Ry. Co., supra.* The negligence complained of in that case consisted in allowing a highly explosive and dangerous object likely to attract children, upon the right of way over which the public was permitted to pass.

The facts in that case differ from the facts in the present cases.

Among the many cases cited by the defendant is that of *Wheeling & L. E. Rd. Co.* v. *Harvey,* 77 Ohio St., 235, 83 N. E., 66, 122 Am. St. Rep., 503, 19 L. R. A. (N. S.), 1136. That is an opinion, covering 35 pages of the Supreme Court Reports announced by Judge Summers, whose habit it was to cite all cases in any way reflecting upon the question under examination. In the *Harvey case* the question was whether an infant could recover for injuries received when he entered upon the property of the railroad company and was injured by the operation of a turntable. The first two paragraphs of the syllabus are as follows:

"1. It is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance.

"2. A railroad company is not liable to an infant who comes upon its premises without invitation and who is injured there while playing, without its knowledge, with a turntable. The doctrine of the turntable cases is disapproved. *Harriman* v. *Railroad Co.,* 45 Ohio St., 11, distinguished."

The holding of the court in the *Harvey case* was bit-

terly assailed by Judge Wanamaker in the case of
*Ziehm* v. *Vale, supra.* In spite of the severe criticism
by Judge Wanamaker, the *Harvey case* still stands as
the law of Ohio. While it especially deals with at-
tractive nuisances and attractive dangers as noted on
pages 249 and 262 of the opinion, it covers a broader
field as to the liability of the owner of property to
children who trespass upon the property without in-
vitation or inducement.

On page 252 *et seq.,* of the opinion, there is a discus-
sion at large and many cases cited as to the duties
which the owner of property owes to a trespasser
upon his premises and also whether there is a larger
duty owed to children than to adult trespassers.

In the case of *Hannan, Admr.,* v. *Ehrlich,* 102 Ohio
St., 176, 131 N. E., 504, paragraphs three, four and
five of the syllabus are as follows:

"3. Actionable negligence exists only where the one
whose act causes or occasions the injury owes to the
injured person a duty created either by contract or by
operation of law, which he has failed to discharge.

"4. A licensee takes his license subject to its attend-
ant perils and risks, and the licensor owes him no duty
except to refrain from wantonly or wilfully injuring
him and to exercise ordinary care after discovering
him to be in peril; he should not be exposed to hidden
dangers, pitfalls or obstructions.

"5. The foregoing rule is not altered by the fact that
the injured person is a child of tender years."

We are not disposed to further discuss the instant
case. The defendant did not owe any obligation to the
children playing in the adjacent vacant lot, to put a
watchman there to protect them against the dangers
incident to going on the tracks where trains were
operated at a proper rate of speed. Having, during

a period prior to the accident, furnished a watchman, one of whose duties was to watch the children, the defendant was under no obligation to notify the children or their parents of the withdrawal of the services of such watchman. The train was being operated at a legal rate of speed, in full view of the minor, and when he left the vacant lot where he had been playing and crossed the intervening dirt road and went upon the right of way of the railroad company where he was injured, he was a trespasser upon such property and the railroad company was not responsible for withdrawing the watchman or in failing to erect a fence to exclude the passage upon its property of trespassers. The statute relating to fencing railroad property limits the necessity for the erection of such fence to the protection of stock and cattle, with no reference to the exclusion of pedestrians or children.

We are of the opinion that the court below did not err in sustaining the demurrers.

*Judgment affirmed.*

HORNBECK and SHERICK, JJ., concur.

SHERICK, J., of the Fifth Appellate District, sitting by designation in the Second Appellate District.