## CIRCUIT COURT OF THE CITY OF RICHMOND

Robert J. Robinson, Jr.,
etc., et al.

    v.

City of Richmond et al.

Case No. LJ 261

Christopher S. Robinson,
etc., et al.

    v.

City of Richmond et al.

Case No. LJ 255

July 7, 1989

By JUDGE ROBERT L. HARRIS, SR.

On March 28, 1989, the court heard argument in these related matters on defendants' plea of governmental immunity and demurrer.

On May 24, 1981, the plaintiffs, Robert J. Robinson, Jr., and Christopher S. Robinson, sustained burn injuries while playing in a gas manhole at the Fells Street Landfill, owned and operated by the City of Richmond ("City"). As a consequence, plaintiffs seek damages from the City and several of its officers and employees, namely: two Directors of Public Works, the Administrator of Streets and Sewers, and the Project Engineer for the Fells Street Landfill. Plaintiffs rely on theories of negligence, ultrahazardous activity, nuisance, attractive nuisance, operational negligence, and gross negligence for recovery.

The pertinent facts for the court's decision are as follows. Operation of the landfill officially ended in 1979. Capping and cover operations, however, continued to and beyond the date of plaintiffs' injuries.

Prior to plaintiffs' accidents, the City installed a methane control system to prevent migration of the gas from Fells Street into the surrounding neighborhoods, and to transport the gas to a collection point for disposal by burning or venting. The accidents occurred in a drip manhole that was part of this system. The manholes provide a means for bleeding water out of the system, and are closed by means of a cover secured by bolts. On the date plaintiffs were injured, the manhole cover in question was unsecured and the manholes generally were in a state of disrepair. There was no fencing or signs on the premises warning of the methane gas.

After terminating operations as a landfill, the City considered alternate uses for the site. First, on September 9, 1976, the City had prepared a plan to make Fells Street Landfill into a recreational facility. This plan was never implemented, however. Then, on May 7, 1981, the City was awarded a grant from the Department of Housing and Urban Development to develop a system to produce, capture, and use methane gas at the landfill to reduce costs of heating and/or provide electricity to federally subsidized housing projects. The City did enter into a contract with SCS Engineers, but the overall plan to produce electricity was never completed. The City at no time charged a fee for use of the landfill.

## I. *Plea of Governmental Immunity*

In count I of the amended motion for judgment, plaintiffs claim the defendants negligently operated and maintained the landfill. The question of municipal corporation immunity depends on whether the function involved is governmental or proprietary; the former granting immunity, the latter not. *Fenon v. City of Norfolk*, 203 Va. 551, 125 S.E.2d 808 (1962).

The City takes the position that operation of a landfill, like the collection of garbage, is a governmental function. Whereas, plaintiffs contend that the City's maintenance and operation of a defunct landfill is more akin to the maintenance of streets and sidewalks, a proprietary function. And, even if operation of a landfill is deemed a governmental function, the City's plans to change the landfill into a recreational facility and to generate electricity therefrom, transformed the once governmental function into a proprietary function.

It is well-settled Virginia law that the collection of garbage is a governmental function. *Taylor v. Newport, News*, 214 Va. 9, 197 S.E.2d 209 (1973); *Ashbury v. Norfolk*, 152 Va. 278, 147 S.E. 223 (1929).

What makes this case difficult, however, is that in Virginia the maintenance of streets and sidewalks has been referred to as a *ministerial* function expected from governmental immunity, raising the question of whether a third category must be considered. *See City of Norfolk v. Hall*, 175 Va. 545, 9 S.E.2d 356 (1940). In these cases the words "proprietary" and "ministerial" were used interchangeably, and the holdings did not rest upon whether or not the municipality was reaping a monetary gain. But these cases are the exceptions rather than the rule to the true test set out in *Fenon, supra*, wherein the Supreme Court stated:

> The underlying test of determining whether the protection of governmental immunity applies is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary benefit. 203 Va. at 556, 125 S.E.2d at 212.

In the case at hand, there was no fee charged for use of the landfill. The operation and maintenance of the landfill was "for the common good of all without the element of special corporate benefit, or pecuniary benefit." Accordingly, the court finds that operation of Fells Street Landfill was a governmental function.

But this finding does not fully resolve the issue. Operation of the Fells Street Landfill was discontinued approximately two years prior to plaintiffs' accidents, but the maintenance of the landfill continued, and has continued to the present. The plaintiffs have argued that the City, by planning to convert the landfill into a recreational area or a so-called public utility, transformed the governmental function. A landfill, by its nature, continues indefinitely as a landfill. Without further action, the character of the facility persists for all time. If the use of the property were to change, a different set of facts would be presented.

I am not persuaded that mere plans by the City to convert the site into a recreational area and to generate electricity for pecuniary gain did change the governmental function involved to a proprietary function. Accordingly, the plea is sustained as to claims of negligence against the City, based on the City's plea of governmental immunity.

The city employees share the same immunity for acts of negligence which are committed within their scope of employment and while performing a discretionary function. *Lentz v. Morris*, 236 Va. 78, 372 S.E.2d 618 (1988).

In count VI, plaintiffs allege a claim of gross negligence. As a general proposition, plaintiffs contend that the employee defendants' failure to put up fencing or post signs since the time the site was closed, coupled with the fact that another explosion had occurred in 1976 and that children frequented the area, constituted an utter disregard for the public's safety. Based on these allegations, the court finds that plaintiffs have alleged sufficient facts upon which an issue of gross negligence is presented. Accordingly, Count VI survives both the plea of governmental immunity and demurrer as to the city employees. *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984).

## II. *Demurrer*

A demurrer admits the truth of all material facts, and the reasonable inferences therefrom, that are properly pled. *Lentz v. Morris, supra.*

The defendants contend that the allegations of ultra-hazardous activity, nuisance, attractive nuisance, and operational negligence are attempts to disguise purely personal injury claims to avoid the City's cloak of immunity, and, therefore, are demurrable for failure to state separate causes of action. In addition, defendants argue that Virginia dos not recognize a cause of action for attractive nuisance.

A brief discussion of each allegation is appropriate. In Count II, plaintiffs allege that collection of highly explosive methane gas is an ultrahazardous activity for which the City is strictly liable. However, in *Philip Morris, Inc. v. Emerson,* 235 Va. 380, 406, 368 S.E.2d 268, 282 (1988), the Supreme Court decided that the handling of supertoxic chemicals, like pentaborane gas, was not an ultrahazardous activity where the risk of loss could not be eliminated by the exercise of reasonable care. There being no apparent distinction in the dangerous propensities of pentaborane and methane gas, the demurrer is granted as to Count II.

In Count III, plaintiffs allege that the collection of methane gas created a public nuisance, an exception to governmental immunity. *City of Newport News v. Hertzler,* 216 Va. 587, 221 S.E.2d 146 (1976). Defendant, on the other hand, cites *Philip Morris, supra,* for the proposition that the court must "look to the object of the action, rather than its form, to determine the extent of liability of the defendants." 235 Va. at 407, 368 S.E.2d at 282.

In *Philip Morris,* the court cited the following language in striking the nuisance claim:

> Merely attaching the label "nuisance" to an action for personal injuries does not alter the nature of the action. Where the acts or omissions constituting negligence are the identical acts which it is asserted give rise to a cause of action for nuisance, the rules applicable to negligence will be applied. *Philip Morris,*

235 Va. at 407, 368 S.E.2d at 283, quoting *Randall v. Village of Excelsior*, 258 Minn. 81, 86, 103 N.W.2d 131, 135 (1960).

However, the case at hand is readily distinguishable from *Philip Morris*. In *Philip Morris*, plaintiff sought to recover for a private nuisance without alleging that the noxious gas entered its premises. In this case, however, the plaintiffs seek to recover for a public nuisance, and have alleged facts of a unique and independent injury from that of the public at large.

In addition, a municipality may not itself create and maintain a nuisance which results in injury to a person. McQuillan, *Municipal Corp.*, § 53.59d. In *Miller & Meyers v. Newport News*, 101 Va. 432, 436, 44 S.E. 712, 713 (1903), the Supreme Court stated: "The mere fact that a nuisance exists, and has occasioned an injury to a third party, does not render the corporation liable, provided the nuisance was not created or maintained by the corporation itself."

Plaintiffs have alleged that the City created a nuisance at Fells Street Landfill. The existence of facts which the court may declare sufficient to constitute a public nuisance is a question of fact for the jury. *Price v. Travis*, 149 Va. 536, 140 S.E. 644 (1927). Accordingly, the demurrer is overruled as to Count III.

In Count V, plaintiffs set out a claim based on operational negligence. Since the court is not persuaded that operational negligence is a distinct cause of action from that of ordinary negligence, the demurrer is granted as to Count V.

Finally, in Count IV, plaintiffs set out a claim for attractive nuisance. As plaintiffs urge, in several cases, involving electricity and explosives, the courts have imposed special duties when children of tender years were involved. *See e.g. Robbins v. Old Dominion Power Co.*, 204 Va. 390, 131 S.E.2d 274 (1968); *Daugherty v. Hippchen*, 175 Va. 62, 7 S.E.2d 119 (1940). However, this court must recognize that the doctrine has been expressly repudiated in Virginia. *Washabaugh v. Northern Virginia Construction Co.*, 187 Va. 767, 48 S.E.2d (1948). Accordingly, the demurrer is sustained as to Count IV.